UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LILIANA IZAGUIRRE, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-11-04195 |
| | § | |
| UGLAND MARINE MANAGEMENT AS, | § | |
| | § | |
| *Defendant.* | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the court is defendant Ugland Marine Management AS's ("Ugland Marine") motion for final summary judgment. Dkt. 26. After considering the motion, response, reply, surreply, competent evidence, and applicable law, Ugland Marine's motion (Dkt. 26) is **GRANTED**.

**I. BACKGROUND**

*A.    Factual Background*[1]

Plaintiff Liliana Izaguirre ("Izaguirre") is a longshoreman who was injured at the Port of Houston while unloading cargo in the hold of the *M/V Fermita* on April 26, 2011. Dkt. 28 at 4. At the time of her injury, Izaguirre was acting within the course and scope of her employment for non-party Cooper/T. Smith Stevedoring ("Cooper/T. Smith"). *Id.* at 4–5. Defendant Ugland Marine employed the crew of the *M/V Fermita* at the time of Izaguirre's accident. Dkt. 26 at 2.

On April 24, 2011, the *M/V Fermita* arrived in Houston from Savannah, Georgia and was "all fast" starboard side to a city dock at 6:36 p.m. *See id.* at 3. Captain Ralph Perera ("Perera") of Sabine Surveyors, Ltd. boarded the vessel thereafter and conducted a cargo condition survey. *Id.*

---

[1] On a motion for summary judgment, the court views the evidence in the light most favorable to the non-movant and draws all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

He reported that the vessel loaded a cargo of steel sheets in coils and steel pipes in bundles at Kaoshiung, Taiwan from February 27, 2011 to March 9, 2011, for unloading in Mexico and the United States. Dkt. 26, Ex. A-2 (cargo condition survey) at 2. The Houston-bound cargo in the vessel's No. 3 hold consisted of 639 bundles of steel pipes "over stowed" in the forward section on 524 pieces of steel sheets in coils. *Id.* at 6. The aft end of the cargo hold was stowed with steel sheets in coils destined for New Orleans, Louisiana. *Id.* According to Perera's report, "[s]ecuring [of the bundles] was considered generally adequate, with no evidence of shifting noted. . . . The physical condition of the cargo appeared to conform to the Mate's Receipts and/or pre-load condition survey." *Id.* Perera concluded his report on hold No. 3 by stating that "a cargo of steel sheets in coils was found stowed under the pipe stow and, therefore, was not accessible for inspection." *Id.*

At 7:00 p.m. on April 24, Cooper/T. Smith's stevedores, including Izaguirre, boarded the vessel to prepare for cargo operations. Dkt. 26 at 4; *see also id.*, Ex. B (the vessel's Daily Working Report) at 1. Discharge operations for hold No. 3 began at 7:45 p.m. and stopped at 11 p.m., without any reported incidents or complaints. Dkt. 26 at 4. Operations resumed the following morning, on April 25, at 7:00 a.m. and proceeded without reported incidents or complaints until the day's operations ceased at 10:00 p.m. that evening. *Id.*; *see also id.*, Ex. B at 3.

On April 26, the day of the incident, Cooper/T. Smith's superintendent David Rubio ("Rubio") performed a walk-around inspection, including an examination of hold No. 3. Dkt. 26 at 4. By that time, hold No. 3 had been substantially discharged so that Rubio could see how the coils were lashed in place. Dkt. 26, Ex. D (Rubio's deposition transcript) at 27:18–28:2. Rubio testified that the manner in which the coils were secured was "routine." *Id.* at 28:1–5. He checked for but did not see any problems. *Id.* at 28:6–17. He then held a safety meeting at 7:00 a.m. for the longshoremen working on the vessel. *Id.* at 28:18–29:21. Rubio instructed the longshoremen to

remove cables from the area before operating forklifts because cables could get caught in a moving forklift and cause an accident. *Id.* at 29:22–31:9.

After the safety meeting, the longshoreman resumed work in hold No. 3 until 10:00 a.m. Dkt. 26 at 4. At about that time, according to Cooper/T. Smith's supervisor investigation report, coworkers reported that a 15-foot section of wire cable was lying on the tanktop adjacent to where the plaintiff was standing. *Id.*; Dkt. 26, Ex. C (the supervisor's investigation report) at 2. A member of Izaguirre's gang drove a forklift over the wire cable, catching one end of the cable in the stow of coils. Dkt. 26, Ex. C at 2. As the forklift tire ran over the cable, it jerked tight and struck Izaguirre in the legs, causing her to fall forward and suffer injuries. *Id.* No personnel from the vessel were present in the hold at the time of the incident. Dkt. 26 at 4; *see also* Dkt. 28, Ex. A (Izaguirre's deposition transcript) at 60:15 ("No crew member was in the hold.").

Rubio opined that the cause of Izaguirre's accident was the failure of the longshoremen to follow safety instructions in dealing with the cables and was not attributable to the vessel. Dkt. 26, Ex. D at 34:16–35:18. Izaguirre testified that she was hit from behind by one of the cables, but she is not sure how the accident happened or who cut the particular cable that injured her. Dkt. 28, Ex. A at 64:13–65:18. She also testified that the cargo was not properly secured with the lashing that led to her injury, and had the lashing been properly placed, the accident would not have occurred. Dkt. 28, Ex. C (Izaguirre's affidavit) at 1–2, ¶¶ 5–8. Izaguirre admitted in her deposition testimony that she is not an expert in loading and securing coils, and she has no knowledge regarding who loaded the cargo in hold No. 3. Dkt. 28, Ex. A at 143:8–21.

    B.    *Case Background*

Izaguirre filed suit against Ugland Marine (misnamed as the J.J. Ugland Companies) in the 113th Judicial District Court of Harris County, Texas, Cause No. 2011-40432, on July 7, 2011. Dkt.

3 (defendant's amended notice of removal) at 1; Dkt. 3, Ex. B (plantiff's original complaint). Ugland Marine removed the case to this court on December 5, 2011, asserting diversity and federal-question jurisdiction for removal purposes under 28 U.S.C. § 1441. Dkt 3 at 4–5, ¶¶ 9–11.

On January 20, 2012, the court granted Izaguirre's motion for leave to amend her complaint. Dkt. 14. Izaguirre's first amended complaint asserts negligence causes of action, in her individual capacity and as next friend of her minor children, under general maritime law and 33 U.S.C. § 905(b) of the Longshore and Harbor Workers Compensation Act ("LHWCA"). Dkt. 12, Ex. 1 at 1–2. Izaguirre asserted her negligence claims against Ugland Marine and Ugland Shipping AS ("Ugland Shipping"). *Id.* at 1. To date, however, Izaguirre has not filed any proof of service as to Ugland Shipping, a Norwegian company.

Ugland Marine filed a motion for summary judgment (the "motion") on Izaguirre's negligence claim on October 15, 2012. Dkt. 26. Izaguirre responded to Ugland Marine's motion on November 2, 2012, and Ugland Marine filed a reply on November 12, 2012. Dkts. 28–29. On December 3, 2012, the court granted Izaguirre's motion for leave to file a sur-reply. Dkt. 33. The motion is ripe for adjudication.

## II. Legal Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008). A fact issue is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the [nonmovant]." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). Ultimately, "[w]here the record taken as a whole

4

could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986).

Under Rule 56, the movant "bears the initial burden of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001) (quoting *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986)); *see also TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). If the movant makes this showing, the ultimate burden to avoid summary judgment shifts to the non-movant who "must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial." *Davis-Lynch, Inc., v. Moreno*, 667 F.3d 539, 550 (5th Cir. 2012). Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are no substitute for specific facts showing a genuine dispute for trial. *TIG Ins. Co.*, 276 F.3d at 759.

### III. ANALYSIS

  *A.*  *The LWHCA and the* Scindia *Duties*

The parties agree that Izaguirre's individual negligence claim arises solely under section 5(b) of the LHWCA. Section 5(b) creates a cause of action against the owner of the vessel on which the employee was working when injured and expressly provides that the remedies provided by the LHWCA are the exclusive means of relief to an injured employee. 33 U.S.C. § 905(b).

In 1981, the Supreme Court delineated the vessel's respective duties to longshoremen under section 5(b) of the LHWCA: (1) the "turnover duty"; (2) the "active control duty"; and (3) the "duty to intervene." *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 166–67, 175–76, 101 S. Ct. 1614 (1981). As explained by the Fifth Circuit, "[t]he basic principle which emerges from *Scindia* is that the primary responsibility for the safety of the longshoreman rests upon the

stevedore." *Randolph v. Laeisz*, 896 F.2d 964, 970 (5th Cir. 1990). Indeed, the shipowner may rely upon the stevedore to prevent the longshoremen's exposure to unreasonable hazards in the areas in which the stevedore's employees are working. *Scindia*, 451 U.S. at 170; *Futo v. Lykes Bros. S.S. Co.*, 742 F.2d 209, 213 (5th Cir. 1984).

The first *Scindia* duty, the turnover duty, places two responsibilities on the owner of the vessel. *Kirksey v. Tonghai Mar.*, 535 F.3d 388, 392 (5th Cir. 2008). First, the owner owes a duty to exercise ordinary care and turn over the ship and its equipment "in such a condition that an expert stevedore can carry on stevedoring operations with reasonable safety." *Id.* Second, the owner must also warn the stevedore of dangers of which it knows or should know. *Id.* This duty to warn, however, does not extend to dangers that are open and obvious or that a reasonably competent stevedore should anticipate encountering. *Id.*; *see also Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 100–01, 114 S. Ct. 2057 (1994).

For the active control duty, the vessel has a duty to "exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas, or from equipment, under the active control of the vessel during the stevedoring operation." *Scindia*, 451 U.S. at 167. If the vessel relinquishes control over an area to the stevedore, then it is the primary responsibility of the stevedore to remedy a hazard in that area. *Turner v. Costa Line Cargo Servs.*, 744 F.2d 505, 512–13 (5th Cir. 1984).

And lastly, regarding the duty to intervene, this narrow duty arises when vessel owners have "actual knowledge" of a ship or equipment hazard and a stevedore's decision to proceed despite the unsafe condition. *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1032 (5th Cir. 1985). The vessel owner is entitled to defer to the qualifications of the stevedore and rely on the stevedore's general competence. *Greenwood v. Societe Francaise De*, 111 F.3d 1239, 1249 (5th Cir. 1997).

B.     *Application of Law to Facts*

Ugland Marine moves for summary judgment as to all three *Scindia* duties. The court considers each of these duties in turn.

1.     Turnover Duty

Ugland Marine argues that the vessel crew exercised ordinary care under the circumstances, as indicated by Rubio's testimony about the routine nature of the coils' lashing, and Izaguirre has no evidence of the vessel's breach of the turnover duty. Dkt. 26 at 13. Izaguirre contends that the vessel breached this duty by failing to warn the stevedore's employees of the incorrect lashing, which was done outside accepted practice. Dkt. 28 at 17. However, because Izaguirre's testimony regarding the alleged defect is conclusory, she fails to meet her summary judgment burden.

Izaguirre testified in her deposition and in a supplemental affidavit that the lashing incorrectly secured the cargo and created the danger that led to her injury. *See* Dkt. 28, Ex. A at 87:22–24; *id.*, Ex. C at 1–2, ¶¶ 5–8. She does not expand her testimony beyond conclusory statements to explain how the lashing secured the cargo incorrectly or how the lashing's placement was outside industry custom and practice. Thus, without any competent lay or expert testimony on this issue, Izaguirre cannot sustain her threshold burden to show the existence of a dangerous condition.

But even if Izaguirre had raised a genuine dispute of material fact on the existence of a dangerous condition, she has not shown that it was unreasonable for the vessel's crew, in the exercise of ordinary care, to rely on the stevedore-employees to identify and cope with the potential defect. *Howlett*, 512 U.S. at 104. Izaguirre has not contested the testimony of her superintendent, David Rubio, who testified that he personally inspected the hold again on the morning of the incident and determined that the coils were lashed in a routine manner without any apparent problems. Dkt. 26, Ex. D at 28:1–17. Without any evidence to the contrary, the vessel was entitled to rely on the

stevedore-superintendent's inspection that did not reveal any cause for concern. Accordingly, the court finds that Izaguirre has not demonstrated a genuine dispute of material fact regarding breach of the defendant's turnover duty.

    2.    <u>Active Control Duty</u>

Ugland Marine moves for summary judgment on its active control duty, arguing that this duty is not implicated because the evidence demonstrates "that all areas and equipment involved in the discharge operation were under the control of the stevedore, Plaintiff's employer." Dkt. 26 at 13–14. Izaguirre does not contest this in the argument of her summary judgment response, but she contends in her recitation of the facts that the crew had a duty to inspect the stevedore's workspace prior to and after loading the cargo on the vessel and before removal of the coils at the dock. Dkt. 28 at 7–10. However, a general duty of inspection does not, without more, implicate *Scindia*'s active control duty, and Izaguirre fails to raise a genuine dispute of material fact as to breach of the active control duty. *See Fontenot v. United States*, 89 F.3d 205, 208 (5th Cir. 1996).

    3.    <u>Duty to Intervene</u>

For similar reasons described above in the court's consideration of the turnover duty, Izaguirre fails to raise a genuine dispute of material fact on the duty to intervene. Izaguirre has failed to introduce any competent evidence tending to show a hazardous condition of which the vessel owner knew or should have known. And even if Izaguirre had presented competent evidence that a hazardous condition was present, the vessel owner was entitled to rely on the competence of the stevedore's superintendent, David Rubio, who testified that he examined the manner in which the coils were secure on the third day of offloading, and he did not detect any problems. Dkt. 26, Ex. D at 28:1–17.

In sum, Izaguirre has presented no competent evidence to create a genuine dispute of material fact as to the breach of any of the three *Scindia* duties that the vessel owner owed to plaintiff as a longshoreman. Izaguirre's negligence claim, filed in her personal capacity, may not proceed to trial. Further, her derivative lost society claim filed as next friend of her minor children, which depends on a showing of defendant's negligence, also fails as a matter of law. *See Hassanein v. Avianca Airlines*, 872 F. Supp. 1183, 1190 (E.D.N.Y. 1995) (granting summary judgment on pliantiff's loss of consortium claim to the extent the claim was dependent on his injured spouse's claims for emotional injuries that were also dismissed).

## IV. CONCLUSION

In conclusion, Ugland Marine's motion for final summary judgment (Dkt. 26) is **GRANTED**. Izaguirre's claims, asserted in her personal and representative capacities, against Ugland Marine and Ugland Shipping[2] are **DISMISSED WITH PREJUDICE**. The court will enter a separate final judgment consistent with this opinion.

It is so **ORDERED**.

Signed at Houston, Texas on March 5, 2013.

_____
Gray H. Miller
United States District Judge

---

[2] To date, Izaguirre has not filed any proof of service upon Ugland Shipping. And because Ugland Shipping is similarly situated to Ugland Marine as to the substance of Izaguirre's claims, which fail as a matter of law, the court may also dismiss Izaguirre's claims against Ugland Shipping on the merits. *See Nolasco v. CitiMortgage, Inc.*, No. H-12-1875, 2012 WL 3648414, at *7 n.8 (S.D. Tex. Aug. 23, 2012) (holding that unserved defendants may benefit from the court's dismissal on the merits when they are similarly situated to the moving defendants).